UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SHAMMUA WILLIAMS,

    Plaintiff,

    v.

MICHAEL A. CARROLL, JAMES J.
OBALDO, ALFREDO Z. SILVA,
LAURENCE T. STILES, DANIELLE N.
PHILP, DAVID ADAMS, ADAM C.
WOLBERS, and CITY OF CHICAGO,

    Defendants.

No. 08 C 4169
Judge James B. Zagel

**MEMORANDUM OPINION AND ORDER**

**I.    BACKGROUND**

Defendants, the City of Chicago and seven of its police officers, seek summary judgment on the Plaintiff's 42 U.S.C. § 1983 claims for false arrest and unlawful search as well as his state law claims for malicious criminal prosecution. The claims stem from an automobile stop the police made of the defendant, followed by his arrest and prosecution. I grant summary judgment on the malicious prosecution claim and deny it on the unlawful search claim. I grant summary judgment on the false arrest claim in part and deny it in part.

**II.    STANDARD OF REVIEW**

Summary judgment under Rule 56 is appropriate if the evidence demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56( c). *See Celotex v. Catrett*, 477 U.S. 317, 422 (1986); *see also Vision Church v. Vill. of Long Grove*, 468 F. 3d 975, 988 (7th Cir. 2006). A court evaluates the evidence in the light most favorable to the non-moving party, making no determinations about the

credibility of witnesses or the weight of the evidence. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986); *see also Abdullahi v. City of Madison*, 423 F.3d 479, 484 (7th Cir. 2008).

The evidence submitted in summary judgment briefing and argument must be admissible at trial, though sworn testimony, such as from a deposition or affidavit, may be considered. *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *Scott v. Edinburg,* 346 F.3d 752, 759-60, n. 7 (7th Cir. 2003). An affidavit may not be offered, however, for the mere purpose of creating a triable issue of fact by contradicting prior sworn testimony. *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999); *see also Velez v. City of Chicago*, 442 F.3d 1043, 1049 (7th Cir. 2006).

## III.  THE LOCAL RULE 56.1 DISPUTES

The Plaintiff requests that I strike many of the Defendants' Local Rule 56.1(a)(3) statements of undisputed material facts. My responses to the motions to strike are attached as an appendix.

## III.  STATEMENT OF FACTS

Having considered Defendants' asserted facts and Plaintiff's challenges to those facts, the following facts arise undisputed from the record.

Shammua Williams was headed to pick up his cousin, Corey Ross, in Chicago in the late afternoon or early evening of July 23, 2006. Riding along with him in the trunk of his car were a .40 caliber semi-automatic hand

gun and a printed-out card with the words "Fugitive Recovery Agent" on it, along with Williams picture and name. Williams was wearing his seatbelt and obeying the speed limit. The front windows of the car were tinted and rolled down to some extent.[1]

As he was about to make a turn from West Division Street onto North Pulaski Road, Williams was stopped by the Defendant officers. The officers approached Williams in his stopped vehicle. Williams eventually understood the police to want him to cut the engine. After cutting the engine, Williams was handcuffed and placed in a police SUV. The handcuffing was done with one arm over his shoulder and one behind his back.

Once Williams was secured in the police SUV, the police commenced a search of Williams' vehicle. In the cabin of the vehicle the police found Williams' wallet. From the wallet, the officers removed Williams' State of Illinois Identification card, his Social Security card, and a Firearm Owners Identification card. The two I.D.s bear Williams' name, picture, and signature, and the address "133 N. Austin, Chicago, Illinois 60614." Williams claims that he lives at an address not in Chicago, but in Berwyn, Illinois. He admits, however, that all of his forms of identification bear the Chicago address. He has no lease, utilities, or insurance policies tied to a Berwyn address.

In the trunk of the car the officers discovered a gun with two empty and detached magazines. There were no rounds for the weapon there or elsewhere in the car. The police also found a card bearing the title "Fugitive Recovery Agent," Williams name and picture, a "card number," and an expiration date. At the time, Williams was researching the process for becoming

---

[1] Whether or not the windows were rolled all the way down such that the Defendants could see the tinting is in dispute.

a Fugitive Recovery Agent. He happened upon an internet-based company that, if provided with proof of the appropriate state licensing requirements, would issue the Fugitive Recovery Agent's card. The card Williams had was not one of the official version but rather "a sample card...a phony badge of what a Fugitive Recovery badge would look like." The words "sample" or "phony" do not, however, appear on the card. Williams was asked if he was a police officer or enforcement officer and he responded that he was not. At no other time did he represent himself as an officer of any kind.

Williams' gun and card were confiscated, his vehicle towed and impounded. Williams was cited for a felony aggravated weapons charge on the basis of carrying the handgun in a vehicle, a violation of Chicago's registration ordinance (since declared unconstitutional), unlawful representation as a police officer, obstruction of driver's view for the tinted windows, not wearing a seatbelt, failure to carry a driver's license, and failure to carry insurance.

Williams was ultimately acquitted of his charges. He defaulted on the vehicle impoundment issue in an administrative proceeding.

## IV.    DISCUSSION

Williams initially brought six claims against the defendants: 42 U.S.C. §1983 claims for false arrest, unlawful search, and deprivation of due process and state tort claims for malicious criminal prosecution, malicious prosecution of an administrative proceeding, and conversion.

The due process claim has been dismissed by my order and the administrative proceeding and conversion claims have been dismissed by stipulation of the parties. I am therefore left to consider three claims: the §1983 claims for false arrest and unlawful search and the state law claim for malicious criminal prosecution.

A.   **<u>Initial Determinations: Reasonable Suspicion and Probable Cause</u>**

*Reasonable Suspicion for a Vehicle Stop*

Under the Fourth Amendment, officers may stop a car on reasonable suspicion that the driver has violated the law. *See Delaware v. Prouse*, 440 U.S. 648 (1979); *see also United States v. Riley*, 493 F.3d 803, 808-09 (7th Cir. 2007). Reasonable suspicion is less than probable cause, but more than a hunch. *See United States v. Grogg*, 534 F.3d 807 (7th Cir. 2008). To rise above a mere hunch, the suspicion must be supported by "articulable facts." *See United States v. McDonald*, 453 F.3d 958, 960 (2006).

*A Critical Fact Is In Dispute About The Stop*

I cannot determine whether reasonable suspicion existed for the initial stop of Williams's car because a critical fact is in dispute. The officers in this case have consistently stated that they initially stopped Williams because he had illegally tinted front passenger windows in violation of a Chicago ordinance. *See* Chicago, Ill., Mun. Code 9-76-220. It is undisputed that Williams does, in fact, have tinted windows. However, Williams has consistently stated that, being a hot July evening, his windows were rolled completely down. Therefore, no officer could have seen them at the time he was spotted and pulled over.[2] While the defendants in their brief boldly claim that Williams has contradicted himself on this point, they point to no such contradiction in the record. With both parties sticking consistently to their stories, this becomes a classic "he said, she said." Like all such predicaments it comes down to whom you believe. The only solution, then, is to

---

[2]Williams further argues that he has a medical condition that permits him to have the tinted windows under the saving provision of the ordinance. *See* Chicago, Ill., Mun. Code 9-76-220(c). This despite conceding that he has no documentation for the condition. No matter, as the officers would be within their rights to at least stop Williams as they could not have known from a distant even if Williams did have such documentation.

have a jury see the parties make their factual claims under oath in open court so that they may decide for themselves whom to believe.

As the window tinting (and the officers' timely knowledge of it) was the sole basis for the initial encounter with Williams, I cannot make a determination about whether the officers had reasonable suspicion to pull him over.

*Probable Cause in Section 1983 Claims*

Police have probable cause to arrest "when the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Ebert v. Gaetz,* 610 F.3d 404, 412 (7th Cir. 2010) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause "is a practical, nontechnical conception," *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)), and its existence is determined using a "totality-of-the-circumstances approach." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983).

The determination of probable cause is a mixed question of law and fact. *See Ornelas v. United States,* 517 U.S. 690, 696 (1996). On undisputed facts, probable cause can be established or rejected as a question of law. *See Levan v. George*, 604 F.3d 366, 369 (7th Cir. 2010); *see also Potts v. City of Lafayette*, Ind., 121 F.3d 1106, 1112 (7th Cir. 1997). When critical facts are in dispute, however, the parties must present their evidence to a fact-finder to establish the record on which the probable cause determination is made.

In criminal prosecutions, the exclusionary rule commands suppression of evidence found as result of an unlawful search because such evidence is tainted as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). The analysis for § 1983 actions,

have a jury see the parties make their factual claims under oath in open court so that they may decide for themselves whom to believe.

As the window tinting (and the officers' timely knowledge of it) was the sole basis for the initial encounter with Williams, I cannot make a determination about whether the officers had reasonable suspicion to pull him over.

*Probable Cause in Section 1983 Claims*

Police have probable cause to arrest "when the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense." *Ebert v. Gaetz,* 610 F.3d 404, 412 (7th Cir. 2010) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause "is a practical, nontechnical conception," *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)), and its existence is determined using a "totality-of-the-circumstances approach." *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983).

The determination of probable cause is a mixed question of law and fact. *See Ornelas v. United States,* 517 U.S. 690, 696 (1996). On undisputed facts, probable cause can be established or rejected as a question of law. *See Levan v. George*, 604 F.3d 366, 369 (7th Cir. 2010); *see also Potts v. City of Lafayette*, Ind., 121 F.3d 1106, 1112 (7th Cir. 1997). When critical facts are in dispute, however, the parties must present their evidence to a fact-finder to establish the record on which the probable cause determination is made.

In criminal prosecutions, the exclusionary rule commands suppression of evidence found as result of an unlawful search because such evidence is tainted as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 484-88 (1963). The analysis for § 1983 actions,

however, is different. In such actions, "[t]he lack of probable cause to stop and search does not vitiate the probable cause to arrest, because (among other things) the fruit of the poisonous tree doctrine is not available to assist a § 1983 claimant." *Townes v. City of New York*, 176 F.3d 138, 149 (2nd Cir. 1999).

Like this case, *Townes* involved a §1983 plaintiff suing a city and its officers under theories of false arrest and illegal search and seizure. The plaintiff in that case was riding in a taxicab and had on his person two illegal handguns and a small quantity of cocaine. *See id.* at 142. Seeing the police, he hid the handguns under the seats of the taxi and kept the cocaine hidden on his person. *See id.* Police conducted (what was undisputed to be) a stop of the cab unsupported by probable cause, and therefore unlawful. *See id.* That stop led to an illegal search of the cab which uncovered the weapons. *See id.* The plaintiff was then taken into custody and the cocaine was found at the station house in a search incident to arrest. *See id.* Townes was ultimately vindicated on the criminal counts because an appellate court found all the evidence to be fruit of the poisonous tree.

The Second Circuit, however, conducted a different analysis for purposes of the § 1983 action. That court concluded that while the stop and initial search were unsupported by probable cause, there was probable cause for the arrest of Townes based on discovery of the guns. Therefore, the court concluded, Townes' civil claim as to any conduct after the discovery of the weapons was not recoverable. The only possible recovery in that case would have been for "the brief invasion of privacy related to the seizure and initial search" leading up to discovery of the guns. *Id.* at 149. While this holding of *Townes* has not been expressly adopted here in the Seventh Circuit, it has not been meaningfully challenged in this (or any other) circuit. On the

other hand, it has been relied upon in numerous district court opinions. *See, e.g., Paige v. City of Fort Wayne*, 2010 U.S. Dist. LEXIS 91511, *27 (N.D. Ind. Sept. 2, 2010), *Brinson v. Syas*, 2010 U.S. Dist. LEXIS 79923, *21 (N.D. Ill. Aug. 4, 2010), *Blackwell v. Kalinowski*, 2009 U.S. Dist. LEXIS 51590, *8 (N.D. Ill. June 18, 2009), *Cannon v. Christopher*, 2007 U.S. Dist. LEXIS 66146, *8-*16 (N.D. Ind. Sept. 6, 2007); *Bradshaw v. Mazurski*, 2004 U.S. Dist. LEXIS 454, *18-19 (N.D. Ill. Jan. 13, 2004). I am therefore persuaded that in § 1983 actions, the exclusionary rule does not apply and that therefore probable cause to arrest can be based on evidence uncovered in the course of what might otherwise be an illegal stop or search. With that legal principle in mind, I move on to the probable cause determinations for this case.

*Probable Cause Developed At Least As Early As The Discovery Of The Weapon*

Unlike the initial stop, I find on the undisputed facts that there was probable cause to arrest Williams once the officers found the gun and checked Williams's identification cards.

Williams was arrested pursuant to Chicago, Ill., Mun. Code 8-20-040(a), which stated that "[n]o person shall within the City of Chicago, possess, harbor, (or) have under his control...any firearm unless such person is the holder of a valid registration certificate for such firearm." [3] The fact that a .40 caliber, semi-automatic firearm was found in Williams' trunk is undisputed. The fact that it was unregistered in the City of Chicago is also undisputed.

What is disputed is that Williams was, at the time, a resident of Chicago subject to the ordinance. He claims he resided in Berwyn, not Chicago. This is relevant, according to Williams,

---

[3]This ordinance, when combined with another one which outlawed the registration of handguns, has since been determined to be unconstitutional. *See McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010). That determination was made, however, nearly four years after the events at issue in this case.

8

because he is saved by a clause of the weapons registration ordinance, which states that the ordinance does not apply to "[a]ny nonresident of the City of Chicago participating in any recreational firearm-related activity in the city, or on his way to or from such activity in another jurisdiction..." provided the weapon is stowed "unloaded and safely wrapped." Chicago, Ill. Municipal Code 8-20-040. Williams claims that the weapon in his trunk was there because he had been at a shooting range recently and he was lawfully in transit with his weapon.

The problem for Williams is that, even if all that is true, it does not defeat the officers' probable cause for arrest under the law. Probable cause is an *ex ante* analysis, determined on the basis of the facts presented to the officers at the time of arrest. *See, e.g. Smith v. Ball State Univ.* 295 F.3d 763, 769-70 (7th Cir. 2002). In this case, Williams has admitted that an unregistered firearm was in his trunk. Further, he has admitted that every piece of identification he had on his person at the scene bore the 133 N. Austin address, within the City of Chicago. Notably, even the Firearm Owner's I.D. which Williams continually references as somehow beneficial to his case, bears that same Chicago address. Faced with an unregistered weapon and at least two forms of I.D. from Williams showing the Chicago address as his residence (and no I.D. showing any non-Chicago address), the police had more than sufficient cause to make an arrest for violation of Chicago's gun registration ordinance. They were not under any obligation to investigate Williams' claim that he was not a Chicago resident, *see Mustafa v. City of Chicago*, 442 F.3d 544, 548 (7th Cir. 2006) (finding no duty to investigate extenuating circumstances once probable cause has been established), particularly given that Williams could not produce any I.D. bearing the Berwyn address.

### B. Count I: False Arrest Under 42 U.S.C. §1983

A necessary element of a false arrest claim under § 1983 is the absence of probable cause - a finding of probable cause is, therefore, fatal to such a claim. *See Mustafa*, 442 F.3d at 547. Having determined that probable cause emerged at least as early the discovery of the guns and I.D.s, there can be no recovery for false arrest under §1983 after that point. *See Townes* 176 F.3d at 149. There remains some factual dispute about reasonable suspicion or probable cause prior to that point such that judgment as a matter of law is not appropriate yet. Summary judgment is therefore partially granted. This claim survives, but narrowed to the time from which Williams was pulled over until the gun and I.D.s were discovered in the car. *See id.*

### C. Count II: Unlawful Search Under 42 U.S.C. §1983

Defendants' motion for summary judgment on the unlawful search claim is denied. The Defendants assert that their search of Plaintiff's car was lawful as an "inventory search prior to impoundment." Pl's Motion for S.J. at ¶ 2. Inventory searches are "a recognized exception to the warrant and probable cause requirements of the Fourth Amendment." *United States v. Cherry*, 436 F.3d 769, 772 (2006). They are "lawful if conducted pursuant to standard police procedures aimed at protecting the owner's property - and protecting the police from the owner's charging them with having stolen, lost, or damaged his property." *Id.* (internal quotation omitted). It should go without saying that such searches are only allowed if "the police lawfully have custody of the vehicle[]." *Id*. at 775 (internal quotation omitted).

It is this last and most fundamental requirement that the Defendants have not established. The Defendants assert that the Chicago Municipal Code "requires impoundment of any vehicle that contains an 'unlawful firearm or laser sight accessory.'" Defendant's Reply Brief at 10. The Defendants are in essence saying that they could lawfully search the vehicle because it was impounded because there was an illegal weapon that was produced by the search. But the search

10

being challenged by the Plaintiff is the search that *produced* the weapon - which was in the trunk of the Plaintiff's car. Putting the sequence in Defendants' own words, "[a]fter Plaintiff was pulled-over [sic], he was taken out of the car and arrested," Def's Rule 56.1 Statement at ¶ 15, and then "*[a]fter* Defendant's [sic] recovered the illegal handgun, Plaintiff's vehicle was towed pursuant to Chicago Municipal Code...for unlawful firearm in [a] motor vehicle." *Id.* at ¶ 22.

The Defendants go on to argue that they should be entitled to qualified immunity even if the search was a technical violation of the Fourth Amendment. Qualified immunity operates to shield government actors from civil liability unless their actions violate clearly established constitutional or statutory rights. *See Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The inquiry turns on the "objective legal reasonableness" of the officers' actions. *See id.* at 822.

The briefing submitted by the Defendants suggest two distinct theories to which I should apply qualified immunity. The first is the one described immediately above, i.e. that the search was a valid inventory search, or something close enough for qualified immunity to attach. But as I indicated, the story of that search which the Defendants put forth is simply illogical. They have grounded the justification for the search on the things the search produced (the gun and I.D.s). On that theory, I cannot grant summary judgment to the Defendants.

An alternative theory impliedly put forth by the Defendants is that the initial arrest (and subsequent search) was for the window tint violation. Such an arrest is constitutionally permissible, say the Defendants, in light of *Atwater v. City Lago Vista*, in which the Supreme Court held that statutes that permit full custodial arrest even for fine-only traffic violations do not offend the Fourth Amendment. *See* 532 U.S. 318 (2001). Therefore, a search incident to that arrest would place the Defendants at least within the zone of qualified immunity.

11

Summary judgment is denied under this theory because the critical fact of when, exactly, the officers came to notice the tinted windows is a matter of dispute. To be clear, it is undisputed that the officers pulled over the defendant and placed him in custodial arrest in relatively rapid succession, and the search commenced after the arrest. If the sole basis for that stop and arrest - the tinted windows - had not even come to the officers attention at the time they pulled over the Plaintiff and placed him in handcuffs, they would have had no basis for the stop and would clearly have violated established constitutional and statutory law.

### C. Count III: Malicious Prosecution Under Illinois Law

Defendants are entitled to summary judgment on the malicious prosecution claim. At the outset, it bears mentioning that in Illinois, the malicious prosecution cause of action has "long been disfavored." *See Cult Awareness Network v. Church of Scientology Int'l*, 685 N.E.2d 1347, 1352 (1997). This is because "public policy encourages the exposure of crime" and malicious prosecution actions are thought to have a chilling effect on such exposure. *Aguirre v. City of Chicago*, 887 N.E.2d 656, 662 (Ill. App. Ct. 2008).

In the shadow of this policy judgment, Illinois law requires proof of "(1) the commencement or continuance of an original criminal or civil judicial proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause for such proceeding; (4) the presence of malice; and (5) damages resulting to the plaintiff." *Johnson v. Saville,* 575 F.3d 656, 659 (7th Cir. 2009) (quoting *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996)). It follows that the existence of probable cause for the prosecution is a complete defense to a malicious prosecution claim under both Illinois and federal law. *See Cervantes v. Jones*, 188 F.3d 805, 811 (7th Cir. 1999) (citing *Schertz v. Waupaca County*, 875

F.2d 578, 582 (7th Cir. 1989); *Burghardt v. Remiyac*, 565 N.E.2d 1049, 1052 (Ill. App. Ct. 1991)). Probable cause is defined effectively the same for Illinois malicious prosecution claims at is for Fourth Amendment false arrest claims. *See Force v. City of Chicago*, 2010 U.S. Dist. LEXIS 83290, \*13 (N.D. Ill. 2010) (citing *Fabiano v. City of Palos Hills*, 784 N.E.2d 258, 265 (Ill. App. Ct. 2002)). It is "a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the accused committed the offense charged." *See id.*

As determined above, probable cause existed at least as early as when the police held in their hands Williams' unregistered handgun and his multiple forms of I.D. showing a Chicago address. This probable cause determination is fatal to Plaintiff's claim of malicious prosecution for two reasons. First, because the absence of probable cause is required under Illinois law. *See Swick,* 662 N.E.2d at 1242. Second, courts have held that the presence of probable cause automatically negates any inference of malice, which is another critical element of the malicious prosecution claim. *See Turner v. City of Chicago*, 415 N.E.2d 481, 487 (Ill. App. Ct. 1980). Defendants are entitled to summary judgment on the state law malicious prosecution claim.

## V.     CONCLUSION

For the foregoing reasons, summary judgment is granted in part and denied in part as to Count I (false arrest under 42 U.S.C. § 1983), denied as to Count II (unlawful search under 42 U.S.C. § 1983), and granted as to Count III (malicious prosecution under Illinois state law).

ENTER:

*James B. Zagel*
James B. Zagel
United States District Judge

DATE: December 29, 2010

**APPENDIX . THE LOCAL RULE 56.1 DISPUTES**

¶ 5. Denied. There is no such inference. The Plaintiff has admitted that his windows were tinted. However, I consider it a material and disputed fact whether the arresting officers could actually see those windows or not at the time they pulled over the Plaintiff.

¶ 7. Denied. It is true that the deposition testimony does not literally say "handgun," as the Defendants claim. However, it does mention a semi-automatic, .40 caliber "gun" in the trunk of the car and it is clear from the context of the discussion that the "gun" was a handgun.[4] The rest of the objection is without basis, as the setting and item are described quite plainly.

¶ 8. Partially granted. The Plaintiff admits that the gun was not registered in Chicago. I recognize that Plaintiff goes on to deny that he was legally required to register the gun. As will become clear later, however, that conclusion is ultimately immaterial. All that matters for the purposes of this summary judgment motion are what the officers were presented with in the course of the stop.

¶ 9. Granted.

---

[4]If for no other reason, because .40 caliber pistols are commonplace, while .40 caliber rifles - especially semi-automatic ones fed by a magazine, as this gun evidently was - are exceedingly rare.

¶ 10. Granted. I recognize that the Plaintiff disputes that his residence is within the City of Chicago. But as above, that actual determination is immaterial. What matters is what the officers encountered during the stop.

¶ 11. Granted. Contains embedded legal conclusions about the sample "Fugitive Recovery Agent" Card.

¶ 12. Partially granted. The item at issue did contain the Plaintiff's name and picture. Whether or not it was "false law enforcement identification" remains in dispute.

¶ 13. Partially granted. The conclusory statement that the materials were a "false badge" is stricken. However, Plaintiff clearly states that he "asked for" materials that were then "sent to" him. Defendants' use of the word "ordered" is not far from the mark.

¶ 14. Denied. The quoted deposition statement is accurate.

¶ 15. Partially granted. There is no improper inference from the word "recovered." The Defendants' statement that they "allegedly" searched the car is, however, curious in the context of a Local Rule 56.1 statement. I grant Plaintiff's motion to strike the word "allegedly" and therefore deem it established that the Defendants, in fact, searched Plaintiff's trunk after arresting him. *See also* Def's Answer at ¶ 10 (admitting "that plaintiff's person and vehicle were searched at some point.")

¶ 19. Partially granted. Setting aside disputes as to timing and sequence of the arrest and ticketing, the bare fact that Plaintiff was at some point ticketed for having tinted windows appears to be undisputed. That is all ¶ 19 says. Exhibit D, the ticket,[5] is referred to only to support the

---

[5] Plaintiff is right that Defendant erroneously identified the ticket as Exhibit C. But because it did not take much searching to find the ticket under Exhibit D, I will overlook this *de minimis* clerical error. This same footnote applies to several of the following documents which have been misidentified.

fact of ticketing. But because the ticket is submitted without a supporting affidavit verifying its authenticity, I will strike it for purposes of this motion to the extent that Defendant relies on details contained within the ticket to support any disputed factual allegations. *See Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 987).

¶ 20 Partially granted. See discussion of ¶ 19. As in that paragraph, the fact that Plaintiff was arrested and charged (which is the fact asserted) does not appear to be disputed. Indeed, the basis of this lawsuit is that Plaintiff *was* arrested and charged, albeit allegedly without legal cause and with alleged malice. Again, though, because of the lack of accompanying affidavit, I will not consider any aspect of the police report beyond the bare fact of the charges.

¶ 22. Partially granted. The bare fact that the car was towed and impounded is undisputed (and again, is a basis for Plaintiff's claims). Additionally, the fact that Defendants cited the unlawful weapon ordinance as the reason for the tow is not disputed. I will strike, however, the Defendant's use of the term "illegal handgun" as that contains an embedded legal conclusion which is in dispute. And of course, I pass no judgment here on whether Defendants acted lawfully in issuing the citation. I merely recognize as undisputed that the unlawful weapon ordinance was the citation they relied upon for the tow and impoundment.

¶ 23. Denied. I make no such inference that the use of the word "recovered" implies illegal conduct on the part of the Plaintiff.

¶ 25, 26, 27, 28, 29. Granted.

¶ 29. Granted. I do not understand Defendants to be arguing for issue preclusion (historically known as collateral estoppel) on probable cause because their motion includes an argument on the merits for a determination of probable cause. As such, the fact contained in ¶ 29 is irrelevant.